TULSA RADIOLOGY ASSOCIATES, INC., Roger L. Kinney, M.D., and M.S. Bartlett, M.D., Appellants,

v.

Frank R. HICKMAN, Appellee.

No. 59716.

Court of Appeals of Oklahoma, Division No. 1.

Feb. 14, 1984.

Rehearing Denied April 17, 1984.

Certiorari Denied June 19, 1984.

Released for Publication by Order of Court of Appeals June 25, 1984.

**538**

Craig Tweedy, Sapulpa, for appellants.

Frank R. Hickman, Charles A. White-book, John K. Harlin, Jr., Tulsa, for appellee.

REYNOLDS, Judge:

Frank Hickman, attorney, filed suit on behalf of his client against Appellants for medical malpractice and deceit. Mr. Hickman alleged Appellants failed to remove both ovaries from his client and deliberately concealed this information from her. Mr. Hickman based this belief on his client's report of a second surgery during which her right ovary was removed. By the time of trial, Mr. Hickman's client had undergone a third surgery during which two ovaries were removed. This brought the total number of ovaries removed from Mr. Hickman's client, prior to trial, to five. At trial, Appellants prevailed on a demurrer to the evidence. No appeal was taken.

Appellants brought the present action alleging malicious prosecution and abuse of process. Trial court sustained Mr. Hickman's general demurrer to Appellants' amended petition and dismissed their action.

Appellants' amended petition recited the following facts. Frank Hickman, Appellee, was contacted by Mary Perkins, on or about August 21, 1979, to pursue a possible medical malpractice action against Appellants. Mrs. Perkins informed Mr. Hickman that on December 23, 1975, she had surgery for the removal of both ovaries. This surgery and resulting pathological reports were performed by Dr. Roger Kinney and Tulsa Radiology Associates. She then informed Mr. Hickman that on March 5, 1979, she again underwent surgery for the removal of the right ovary. No left ovary was seen at the time of the second surgery. Mr. Hickman wrote Dr. Kinney an accusatory letter on August 21, 1979, alleging Appellants intentionally allowed Mrs. Perkins to suffer from an unremoved ovary with cysts. He demanded a money settlement and threatened a law suit on behalf of his client. A copy of this letter was sent to all Appellants. An action for medical malpractice and deceit was filed against Appellants on October 17, 1979. Appellants further alleged Mr. Hickman either failed to investigate or ignored available

medical records prior to filing suit. These records documented the removal of two ovaries by Appellants. *After* suit was filed but prior to trial, Mrs. Perkins had a third surgery. During this surgery, ovaries with cysts were removed from the left and right portions of her abdominal cavity.

■ In an action for malicious prosecution, plaintiffs must show the following: (1) the bringing of the action, (2) its successful termination in favor of the plaintiffs, (3) want of probable cause, (4) malice, and (5) damages. *Page v. Rose*, 546 P.2d 617 (Okl.1976). The question of probable cause is answered in light of the facts existing at the time the action is filed. "One who *initiates* civil proceedings against another has probable cause for so doing if he reasonably believes in the existence of facts upon which his claim is based ...." *Lewis v. Crystal Gas Co.*, 532 P.2d 431, 433 (Okl.1975) [emphasis added]. Probable cause constitutes a complete defense in an action for malicious prosecution. "If no controversy exists over the facts, or if they are conceded, probable cause is a pure question of law for the court." *Id.* at 434.

■ It is generally accepted that women have only two ovaries. Mr. Hickman's belief that Mrs. Perkins had only two ovaries was very reasonable. We find the amended petition recites sufficient facts to show that Mr. Hickman had probable cause to file the action on behalf of his client.

■ Appellants also alleged abuse of process. The essential elements of an action for abuse of process are: (1) issuance of process, (2) an ulterior purpose, and (3) a wilful act in the use of process not proper in the regular conduct of the proceeding. Prosser, *Handbook of the Law of Torts*, § 121 (4th Ed.1971). The third element is explained as:

> [s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, ...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad in-

tentions. The improper purpose usually takes the form of coersion to obtain a collateral advantage, not properly involved in the proceeding itself ....

*Id.* at p. 857. Appellants amended petition fails to recite any facts which show Mr. Hickman had an ulterior purpose in securing the issuance of process. It would be unreasonable to conclude that the trial itself constituted "a wilful act" when, in truth, it apparently revealed Mrs. Perkins had the rare ability to regenerate ovaries.

■ When confronted with a demurrer, the court must liberally construe the challenged petition. It must take as true all the factual allegations and the reasonable inferences drawn therefrom. If the court finds any facts stated in the petition which entitles the plaintiff to any relief, the court must overrule the demurrer. *White v. Wint*, 638 P.2d 1109 (Okl.1981). Trial court properly sustained Appellee's general demurrer to Appellants' amended petition.

AFFIRMED.

YOUNG, P.J., and ROBINSON, J., concur.